## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

CHARTIS SPECIALTY INSURANCE
COMPANY f/k/a AMERICAN
INTERNATIONAL SPECIALTY
LINES INSURANCE COMPANY, an Illinois
Corporation,

      Plaintiff,

v.

TAYLOR MORRISON, INC., a Delaware
corporation, TAYLOR MORRISON
SERVICES, INC., a Delaware
corporation, and TAYLOR WOODROW
COMMUNITIES AT VASARI, L.L.C.,
a Florida limited liability company,

      Defendants.

No. _____

## COMPLAINT FOR DECLARATORY JUDGMENT

Chartis Specialty Insurance Company (Chartis) f/k/a American International Specialty Lines Insurance Company sues Taylor Morrison, Inc. (Taylor Morrison), Taylor Morrison Services, Inc. (Taylor Services), and Taylor Woodrow Communities at Vasari, L.L.C. (Vasari) and alleges as follows:

### INTRODUCTION

1.    Chartis seeks a declaration that it owes no duty to defend or indemnify defendants Taylor Morrison, Taylor Services, and Vasari under four liability insurance policies issued by Chartis with respect to claims and lawsuits related to allegedly defective drywall installed in residential construction located in Florida.

2.    There is an actual, present and bona fide controversy between the parties concerning the alleged obligations of Chartis to defend and indemnify the defendants with respect to the claims and lawsuits involving allegedly defective drywall.

## PARTIES

3.    Chartis is an Illinois corporation with its principal place of business in Chicago, Illinois.

4.    Upon information and belief, Taylor Morrison is a Delaware corporation with its principal place of business in Scottsdale, Arizona.

5.    Upon information and belief, Taylor Services is a Delaware corporation with its principal place of business in Scottsdale, Arizona.

6.    Upon information and belief, Vasari is a Florida limited liability company with its principal place of business in Tampa, Florida.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction in this action under 28 U.S.C. §§ 2201 and 1332, as amended.  This matter involves a dispute between citizens of different states and the value in controversy exceeds $75,000, exclusive of interest and costs.

8.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (c) because one or more of the defendants resides and conducts business in this district and a substantial part of the events giving rise to this claim occurred in this district.

9.    Chartis is entitled to declaratory relief under 28 U.S.C. §§ 2201-2202 in accordance with Florida law.

## GENERAL ALLEGATIONS

### The *Culliton* Lawsuit

10.    In 2008, Kristin Morgan Culliton commenced a lawsuit against Taylor Services and others for herself and a class of similarly situated persons in the Twelfth Judicial Circuit Court for Sarasota County, Florida, in a matter captioned *Culliton v. Taylor Morrison Svcs, Inc.*, No. 2008 CA 012639 NC.  A copy of the amended complaint

2

is attached as **Exhibit A**. Ms. Culliton seeks damages allegedly caused by drywall installed in her home that emits sulfur or sulfide compounds.

11.    Ms. Culliton alleges that she entered into an agreement with Taylor Services to construct a home located at 151314 Skip Jack Loop, Bradenton, Florida 34202. She allegedly closed on her home in September 2006.

12.    Ms. Culliton alleges that Taylor Services installed drywall in her home manufactured and distributed by other defendants in that action.

13.    Ms. Culliton alleges that in November 2007, she began to smell a strong sulfur smell in her home and reported the smell to Taylor Services. Ms. Culliton further alleges that she vacated the home on the advice of her physician due to "unknown and possible health risks."

14.    Ms. Culliton alleges that in October 2008, she received a memorandum drafted by Environ International, a testing company retained by another party. She further alleges that the memorandum reports that the drywall emits "carbon disulfide, carbonyl sulfide and hydrogen sulfide."

15.    Ms. Culliton alleges that the drywall has caused damage to her home, including the following:

> Ms. Culliton has significant damages to her home attributable to the installed drywall which include, but are not limited to, a sulfur-based smell which makes the home uninhabitable, a breakdown and corrosion of major systems in the home including electrical systems, plumbing systems, air-conditioning systems and all other components of the home which are metal based. Further, personal property in the home has been damaged and has either absorbed the smell of the sulfur or has otherwise been contaminated by the sulfuric byproducts emanating from the drywall which has caused those personal items to be damaged beyond repair. In addition, all of the drywall will have to be removed, disposed of and replaced together with other parts of the residence damaged or destroyed

during the removal process, together with the replacement of all damaged personal property.

16.    All the damages that Ms. Culliton alleges on her own behalf and on behalf of the proposed class arise from the alleged emission of sulfur or sulfide compounds from the drywall installed in the home.

### The *Vickers* Lawsuit

17.    On or about March 2, 2009, Karin Vickers and other plaintiffs commenced a lawsuit against Vasari and others for themselves and a class of similarly situated persons in the United States District Court for the Southern District of Florida in a matter captioned *Vickers v. Knauf Gips KG*, No. 09-20510.  A copy of the complaint is attached as **Exhibit B**.  The *Vickers* plaintiffs seek damages allegedly caused by drywall installed in their homes that emits sulfur or sulfide and other chemicals that cause property damage and potential health problems.

18.    The *Vickers* plaintiffs allege that Vasari built two of their homes containing defective drywall.  One home is located at 11019 Carrara Court, Unit 102, Bonita Springs, Florida, and the second home is located at 28479 Altessa Way, Unit 101, Bonita Springs, Florida.  Plaintiffs contend that Vasari caused their injuries by installing the defective drywall in the homes.

19.    The *Vickers* plaintiffs allege that the drywall installed in their homes is "inherently defective because it emits various sulfide gases and/or other chemicals through 'off-gassing' that creates noxious, 'rotten egg-like' odors, and causes corrosion ('the Defect') of air-conditioner and refrigerator coil, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ('Other Property')."

4

20.    The *Vickers* plaintiffs allege that they have "suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring and medical monitoring."

21.    The *Vickers* plaintiffs allege that "[a]s a direct and proximate result" of the drywall and the "corrosive effects of the sulfide gases and other chemicals being released from these products," they have "suffered, and continue to suffer damages," including "costs of inspection as well as the costs and expenses necessary to remedy, replace and remove the defective drywall and Other Property that has been affected."

22.    All the damages that the *Vickers* plaintiffs allege on their own behalf and on behalf of the proposed class arise from the sulfur and sulfide gases allegedly emitted from the drywall installed in their homes.

### The *Galvin* Lawsuit

23.    On or about April 1, 2009, Larry and Rene Galvin commenced a lawsuit against Vasari and others in the United States District Court for the Southern District of Florida in a matter captioned *Galvin v. Knauf Gips KG*, No. 09-20847. A copy of the complaint is attached as **Exhibit C**. The Galvins seek damages allegedly caused by drywall installed in their homes that emits sulfur or sulfide compounds through off-gassing that causes property damage and potential health hazards.

24.    The Galvins allege that Vasari constructed their home located at 11019 Carrara Court, Unit 202, Bonita Springs, Florida "using drywall manufactured and supplied by on or more" other defendants in the action.

25.    The Galvins contend that the drywall installed in their home is "inherently defective because it emits various sulfide gases and/or other chemicals through 'off-

gassing' that creates noxious, 'rotten egg-like' odors, and causes corrosion ('the Defect') of air-conditioner and refrigerator coil, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ('Other Property')."

26.    The Galvins assert that they have "incurred or will incur damages in excess of $75,000 including, but not limited to:  repair/replacement of their homes, Other Property, any materials contaminated or corroded by the drywall as a result of 'off-gasing,' incidental and consequential damages."

27.    The Galvins allege that an independent testing firm found that drywall manufactured by defendants in the action emits sulfide gases, including carbon disulfide, carbonyl sulfide, and hydrogen sulfide.  Plaintiffs further contend that testing by one of the defendants revealed that the drywall "released detectable, above-background levels of various sulfur containing compounds."

28.    The Galvins allege that as a direct and proximate result of Vasari's acts and omissions they have:

> incurred economic damages and are entitled to recover monetary damages for:  replacement/repair of their home; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

29.    The Galvins contend that they have been "exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective drywall." They claim that "sulfides gases and the other chemicals"

that have been released from the drywall and to which they have been exposed are "hazardous, dangerous, or toxic substances." As a result, they allege that "[a]s a proximate result of their exposure to sulfide gases and other toxic chemicals from . . . [the] defective drywall, [they] have developed a significantly increased risk of contracting a serious latent disease."

30.    All the damages that the Galvins allege arise from the sulfur or sulfide gases allegedly emitted from the drywall installed in their home.

### Other Drywall Claims

31.    Upon information and belief, other individuals have made claims against one or more of the defendants in this action alleging damages due to sulfur or sulfide compounds being emitted from drywall installed in residential construction that one or more defendants developed, constructed or sold to the claimants. The claims construction of eighty or more properties in at least fifteen communities or projects located in the State of Florida.

32.    Upon information and belief, all of the damages that these individuals allege arise from the sulfur or sulfide gases allegedly emitted from the drywall installed in their residences.

### Drywall Studies

33.    Beginning in or about 2009, various Federal and State governmental agencies, as well as private testing firms, analyzed drywall and reported that certain drywall, including drywall manufactured in China, contains and emits sulfur-related chemical compounds that are associated with corrosion of metal, damage to other property and complaints of odors and adverse health effects.

7

34.    In October 2009, the United States Consumer Product Safety Commission (CPSC) released several reports concerning testing upon Chinese and domestically-produced drywall.    These reports conclude that the Chinese drywall contained higher concentrations of elemental sulfur compared to the domestic drywall. Further, the reports note that the Chinese drywall emitted higher levels of total volatile sulfur compounds than did the domestic drywall.

35.    On or about November 23, 2009, the CPSC released reports regarding additional drywall testing. The CPSC reported that in a fifty-one home study, hydrogen sulfide gas was detected in homes with defective drywall in concentrations that were statistically higher than in homes without such drywall.  Further, examination of copper wiring in homes containing defective drywall exhibited corrosion.

### The Chartis Policies

36.    Chartis issued to Taylor Morrison Commercial Umbrella Liability Policy Nos. 9746096, effective March 1, 2005 to March 1, 2006 (the 2005 policy), 7412123, effective March 1, 2006, to March 1, 2007 (the 2006 policy), 7412254, effective March 1, 2007, to March 1, 2008 (the 2007 policy), and 7412431, effective March 1, 2008, to March 1, 2009 (the 2008 policy).  A copy of the 2005, 2006, 2007 and 2008 policies are attached as **Exhibits D, E, F and G** respectively.

37.    Taylor Morrison, Taylor Services or Vasari may be entitled to coverage under each of the Chartis policies with respect to claims arising from allegedly defective drywall installed in homes located in Florida only if they can satisfy all conditions for coverage and coverage is not otherwise excluded.

38.    Coverage is barred as provided in the Total Pollution Exclusion Endorsement of the 2006, 2007 and 2008 policies for bodily injury and property damage,

8

if any, associated with defective drywall, arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," as that term is defined in each such policy.

39.    Coverage may be available only to the extent that each applicable self-insured retention is properly exhausted.

40.    Coverage may be available to the extent that a claimant seeks relief from an insured that does not constitute "damages" as that term is used in a policy. Equitable relief involving medical monitoring or economic losses associated with defective drywall do not constitute damages for which coverage is potentially available.

41.    Coverage is barred to the extent that an insured has not suffered damages because of "bodily injury" or "property damage", as those terms are defined in the policy. The mere presence of defective drywall is not property damage and there is no coverage under the Chartis policies for any costs arising out of the process of repairing or replacing the drywall.

42.    Coverage is barred to the extent that any bodily injury or property damage associated with defective drywall is not the result of an "occurrence", as that term is defined in each policy.

43.    Coverage is limited to the extent that any bodily injury or property damage constitutes a single occurrence. Bodily injury or property damage, if any, associated with defective drywall, that is continuing or progressive over any length of time is one occurrence that occurs only when the bodily injury, property damage or both first commenced.

44.     Coverage may be available only for damages because of bodily injury or property damage, if any, associated with defective drywall that occurs during the policy period or occurs after the policy period involving a house for which a deed or title was recorded in the name of the original third-party purchaser during the policy period.

45.     Coverage is barred for bodily injury or property damage, if any, associated with defective drywall for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except as provided in each policy.

46.     Coverage is barred for property damage to property, if any, associated with defective drywall, that an insured owns, rents or occupies.

47.     Coverage is barred for bodily injury or property damage, if any, associated with defective drywall, included in the "products-completed operations hazard," as defined in each policy, and involving homes where the deed or title was recorded in the name of a third-party before the policy incepted.

## Chartis Communication with Defendants

48.     Defendants have demanded indemnification from Chartis under the 2005, 2006, 2007 and 2008 policies for claims or damages arising from allegedly defective drywall installed in homes located in Florida.

49.     Chartis issued reservation of rights letters to the defendants advising that Chartis was reserving its rights to decline coverage. Each letter refers to the policy terms on which Chartis may rely to decline coverage, including the terms noted above.

## COUNT I
## DECLARATORY RELIEF

50.     Chartis incorporates the allegations set forth in paragraphs 1-49.

51.   A controversy exists between Chartis and the defendants regarding the obligation of Chartis to defend and indemnify the defendants under the 2005, 2006, 2007 and 2008 policies with respect to claims arising from allegedly defective drywall installed in residential construction located in the State of Florida.

52.   The interpretation of the applicable terms of each Chartis policy at issue is governed by Florida law.

53.   Coverage is limited or eliminated by terms of each Chartis policy, for the alleged damages for which the defendants have or will seek coverage under each policy.

**WHEREFORE**, Chartis requests the following declaratory relief:

1.   A judgment in favor of Chartis declaring that it has no duty under the 2005, 2006, 2007 and 2008 policies to defend or indemnify Taylor Morrison, Taylor Services, or Vasari with respect to any claims or damages arising from allegedly defective drywall installed in homes located in Florida; and

2.   Such other relief as the Court may deem just and proper.

Respectfully submitted,

Cindy L. Ebenfeld, Esq.
Ellen Novoseletsky, Esq.
Hicks, Porter, Ebenfeld & Stein, P.A.
11011 Sheridan Street, Suite 104
Cooper City, FL 33026
Tel: (954) 624-8700
Fax: (954) 624-8064
cebenfeld@mhickslaw.com
enovoseletsky@mhickslaw.com
*Co-Counsel*

Warren Lutz, Esq.
Paul D. Smolinsky, Esq.
Jackson & Campbell, P.C.

11

1120 Twentieth Street, N.W.
Suite 300
Washington, DC 20036
Tel:    (202) 457-1600
Fax:    (202) 457-1678
WLutz@JacksCamp.com
PSmolinsky@JacksCamp.com
*Counsel for American Home Assurance*
*Company*